THE TRANE COMPANY, a business          )
of AMERICAN STANDARD, INC.             )
                                       )
        Plaintiff,                     )
                                       )          Civil Action No.: 2:09-CV-01045-PMD
        v.                             )
                                       )
CGI MECHANICAL, INC.                   )
                                       )
        Defendant,                     )
                                       )                    **ORDER**
        v.                             )
                                       )
UNITED STATES OF AMERICA,              )
and HENRY J. GARRISON,                 )
                                       )
        Respondents.                   )
_____      )

        This matter is before the court upon cross motions for summary judgment filed by

Plaintiff The Trane Company ("Plaintiff" or "Trane") and Respondent United States of America

("United States") to determine the relative priority of a tax lien held by the United States and a

judgment lien held by Trane on settlement proceeds owed to Defendant CGI Mechanical, Inc.

("Defendant" or "CGI").  Additionally, Henry J. Garrison ("Garrison") and CGI seek summary

judgment with regard to their request that the Court designate any payment made to the Internal

Revenue Service ("IRS") as voluntary and order that such payment be applied to the trust fund

portion of CGI's federal tax liability for which Garrison is personally liable.  For the reasons set

forth below, the court grants the United States' motion for summary judgment and denies CGI

and Garrison's and Trane's motions for summary judgment.

# BACKGROUND

In this case, the Court must decide whether to award $115,868.89 in settlement proceeds received by CGI in a prior state court action to either the United States or Trane. Both parties hold liens against CGI, and this Court must decide whether the IRS satisfied the requirements of 26 U.S.C. § 6323(f) and 26 C.F.R. § 301.6323-1(f) by filing Notices of Federal Tax Lien ("NFTL") that identified the taxpayer, CGI, by its former name, Clontz-Garrison Mechanical Contractors, Inc. ("Clontz-Garrison"). If the Court finds that the NFTLs are valid, the United States is entitled to judgment in its favor because it filed two notices in March and May 2006 before CGI confessed judgment in favor of Trane in October 2006. There is no dispute as to the facts, and the issue presented to the Court for decision concerns the priority to the funds held by CGI.

## A.    Business Activities of CGI Mechanical, Inc.

On April 29, 1979, Clontz-Garrison was incorporated in South Carolina. Clontz-Garrison engaged in mechanical contracting by providing plumbing, heating, and air-conditioning services to customers throughout the state. On October 17, 2003, Clontz-Garrison officially changed its name to CGI Mechanical, Inc. CGI ceased conducting business in April 2005, and was administratively dissolved on February 10, 2009.

Henry Garrison served as president of Clontz-Garrison/CGI from its inception in 1979 until its cessation of business in April 2005. Throughout this time, Clontz-Garrison/CGI used the same tax identification number (xx-xxxx6332), operated from the same addresses, and conducted the same business.

**B.    CGI's Outstanding Employment Tax Liabilities for Tax Years 2004 and 2005**

CGI filed annual and quarterly tax returns for years 1979 through 2003 under the Clontz-Garrison name and utilized the employer identification number ("EIN") referenced above.  In 2004 and 2005, despite changing its name, CGI continued filing Form 940 tax returns and Form 941 identifying the taxpayer as "Clontz-Garrison Mechanical Contractors, Inc.  For the period ending December 31, 2004, CGI filed a 941 tax return that listed the taxpayer as "Clontz-Garrison Mechanical" and its trade name as "CGI Mechanical."  CGI's 2004 and 2005 Form 941 tax returns also listed CGI's business address as "PO Box 71942, Charleston SC 29415."  CGI's 2005 Form 940 tax return listed CGI's business address as "4225 Piggly Wiggly Drive, Charleston SC 29405."  These are the same addresses identified on the tax returns filed by Clontz-Garrison before changing its name to CGI.

However, in November 2004, CGI filed a 2003 Form 1120 corporate tax return with the IRS that indicated it had changed its name from Clontz-Garrison to CGI.  For years 2004 and 2005, CGI also filed Forms 1120 that identified the taxpayer as CGI.  According the United States, however, these tax returns are not at issue in this proceeding and are unrelated to the employment and unemployment tax liabilities on which the NFTLs are based.

Based upon the returns CGI filed, the IRS assessed FICA and FUCA taxes for periods in 2004 and 2005 for a total unpaid balance of $158,836.27, not including accruing statutory additions.  The United States' tax liens against CGI arose upon assessment of the employment tax liabilities and attached immediately to all property and rights to property belonging to, or thereafter acquired by, CGI.

As a result of the tax liabilities described above, the IRS filed two NFTLs against CGI with the Register of Deeds in Charleston, South Carolina on or about March 14, 2006 and May 9,

2006. These NFTLs were filed at the location designated by S.C. Code § 12-57-30, *i.e.*, in Charleston County, which was the location of CGI's principal executive office.

The IRS filed its two NFTLs on Form 668(Y)(c), which is an IRS form entitled "Notice of Federal Tax Lien." These NFTLs identified the taxpayer as "Clontz-Garrison Mechanical Contractors Inc., a Corporation." It also listed the taxpayer's address at 4225 Piggly Wiggly Dr., Charleston, SC 29405-5602, included the Federal Tax Identification Number utilized by Clontz-Garrison / GCI, and indicated unpaid Form 941 balances of $158,085.83 for four periods in 2004 and 2005 (March 2006 NFTL) and $4,018.54 for the 2005 Form 940 tax liability (May 2006 NFTL).

In accordance with S.C. Code Ann. § 12-57-40, the Charleston County Register of Deeds maintains an alphabetical Federal tax lien index, listing the taxpayer's name and residence contained in the notice, the notice's serial number, the date and hour of filing, and the amount of tax, with interest, penalties, and costs. The Register of Deeds does not index the federal tax liens by the taxpayer's identification number. A search of the Charleston County UCC/State/Federal Lien Index under "Clontz-Garrison," either in-person or electronically would have revealed the two NFTLs filed by the IRS. However, it is undisputed that a search under "CGI" would not have revealed these two NFTLs.

### C. *The Trane Company v. CGI Mechanical, Inc.*

In Connection with its commercial HVAC business, CGI did business with Trane. Trane is a Delaware corporation that provides commercial HVAC solutions to customers in Charleston, South Carolina. From approximately 2000 until 2005, Trane sold various products to Clontz-Garrison / CGI. At all times prior to March 2004, Trane addressed its communications to Clontz-Garrison. In April 2004, about 6 months after Clontz-Garrison changed its name to CGI,

Trane began to address its correspondence, purchase orders, invoices, and other communications to CGI.  However, on at least 16 separate occasions from May to November 2004, Trane sent invoices addressed to Clontz-Garrison.  Several of Trane's internal documents continued to refer to CGI as Clontz-Garrison.

At some point during Trane's business relationship with Clontz-Garrison / CGI, CGI failed to pay for goods, materials, equipment, and services provided by Trane.  As a result, on April 18, 2006, Trane filed a breach of contract suit against CGI with the Charleston County Clerk of Court.  On October 11, 2006—after tax liens against CGI arose and after the IRS filed its NFTLs—CGI's President (Garrison) executed a Confession of Judgment in favor of Trane in the amount of $116,201.79, plus interest as specified in the Judgment.  On October 23, 2006, Trane filed this Confession of Judgment with the Charleston County Clerk of Court.  Both the United States' federal tax liens and Trane's judgment exceed the total amount of the settlement proceeds at issue in this litigation.

### D.    Procedural History of this Case

Prior to being sued by Trane, CGI sued HITT Contracting, Inc. for breach of contract and other claims.  *See CGI Mech., Inc. v. HITT Contracting, Inc.,* 2004-CP-10-03145.  To resolve that case, HITT Contracting agreed to pay CGI $115,868.89.  In order to partially satisfy its judgment against CGI, on November 26, 2007, Trane moved for an order compelling CGI to turn over those settlement proceeds.  CGI did not oppose Trane's request, but advised the court that other creditors, including the IRS, may have a superior claim to the settlement proceeds.  As a result, CGI requested that its other creditors be given formal notice so that they could take appropriate action to protect their interests.  CGI sent the IRS a copy of its response; however, Trane did not provide notice to other creditors regarding these proceedings.

On January 8, 2008, the Master-in-Equity ordered CGI to turn over the settlement proceeds to the court, which CGI deposited on February 14, 2008. Then, on March 4, 2008, the Master-in-Equity *sua sponte* ordered the disbursement of these funds to Trane without providing notice to any other creditors. On October 2, 2008, the United States filed a Motion to Intervene in this litigation to claim its alleged priority to the disputed funds as a result of the tax liens. On March 24, 2009, the Master-in-Equity signed an order requiring Trane to return the $115,868.89 to the Charleston County clerk of court to be held in escrow pending a resolution of the priority dispute. Thereafter, on April 7, 2009, the master-in-equity signed an order granting the United States' motion to intervene.

Once its motion to intervene was granted, the United States removed the proceedings to this Court. In addition to the United States and Trane, N.B. Handy asserted its rights to a portion of the settlement proceeds at issue. In the parties' joint stipulation of dismissal, N.B. Handy "disclaims, and waives any right, title or interest in the settlement proceeds at issue in this litigation," and is no longer a party to this case.

In its motion for summary judgment, the IRS contends it has priority over the funds as a result of the tax lien filed in March 2006 and May 2006. However, Trane contends that the IRS improperly filed the liens and did not properly identify the debtor taxpayer as CGI Mechanical Inc. and that the liens are thus ineffective against a judgment creditor who has executed against the property of the judgment debtor.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a

genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## ANALYSIS

It is undisputed that Trane holds a valid judgment lien against CGI's settlement proceeds. Upon the entry of a judgment in the state records, the judgment is a lien upon real property of the judgment debtor for a period of ten years. S.C. Code Ann. § 15-35-810. A judgment does not, however, constitute a lien upon personal property until levied upon during the course of an execution. S.C. Code Ann. § 15-39-100. Where an execution is returned unsatisfied, the judgment debtor may be ordered to appear before the court to provide testimony regarding assets which it has refused to apply toward satisfaction of the judgment. S.C. Code Ann. §§ 15-39-310, -330. In the course of examination and proceedings before the court, "[t]he judge may order any property of the judgment debtor, not exempt from execution, in the hands either of himself or any other person or due to the judgment debtor, to be applied toward the satisfaction of the judgment. . . ." S.C. Code Ann. § 15-39-410.

It is also undisputed that the United States has tax liens that attached to the property of CGI Mechanical as of the date of the assessment of the liens, and that the liens attached to the proceeds of the settlement as of the date of the constructive receipt of those proceeds by CGI

Mechanical. Under 26 U.S.C. § 6321, a lien arises in favor of the United States and against the property and rights to property, whether real or personal, of any taxpayer who is liable to pay a tax who neglects or refuses to do so. The lien arises by operation of law at the time the liability is assessed and continues until the taxpayer's liability is satisfied. *See* 26 U.S.C. § 6322. In this case, liens in favor of the United States arose in 2004, 2005, and 2006 upon the IRS's assessment of CGI's outstanding employment and unemployment taxes. CGI then became entitled to $115,868.89 through the terms of the settlement it negotiated in the action styled *CGI Mechanical, Inc. v. Hitt Contracting, Inc.,* 2004-CP-10-03145. As a result, the lien of the United States attached to those funds at the time the settlement was reached.

Therefore, the only question before this Court is whether the United States' lien is entitled to priority over the judgment lien held by Trane. The priority of a federal tax lien is a matter governed by federal rather than state law. *See Acquilino v. United States,* 363 U.S. 509 (1960). "The priority of the federal tax lien provided by 26 U.S.C. [§] 6321 as against liens created under state law is governed by the common-law rule—'the first in time is the first in right.'" *United States v. Pioneer Am. Ins. Co.,* 374 U.S. 84, 88 (1963) (quoting *United States v. New Britain,* 347 U.S. 81, 85-86 (1954)). However, with respect to persons not identified in Section 6323(a), "notice, filing or recording are not required" for the lien to become valid and effective under 26 U.S.C. §§ 6321 and 6322. *United States v. Bond,* 279 F.2d 837, 841 (4th Cir. 1960). Conversely, a tax lien is not valid against a purchaser of taxpayer's property, a holder of a security interest, mechanic's lienor, or judgment lien creditor, until the IRS files a notice of federal tax lien that complies with section 6323(f). *See* 26 U.S.C. § 6323(a). Since Trane holds a valid and perfected judgment lien against CGI's settlement proceeds, the United States' NFTLs must satisfy the requirements of 26 U.S.C. § 6323 for its tax liens to take priority over Trane's

judgment lien. *See U.S. v. Estate of Romani,* 523 U.S. 517, 529-34 (1998); 26 U.S.C. § 6323(f)(1)(A)(ii). The question presented in this case is whether the notice filed by the Internal Revenue Service against the CGI Mechanical met the requirements of section 6323 so as to become enforceable against a subsequent judgment lien creditor—specifically, whether the notice properly identified the taxpayer.

The NFTL must be filed in an office delegated by the state where the taxpayer's personal property is situated. 26 U.S.C. § 6323(f)(1)(A)(ii). In this regard, S.C. Code Ann. § 12-57-30 requires that "[n]otices of liens for taxes payable to the United States of America and certificates discharging such liens shall be filed in the office of the register of deeds (or clerk of court in those counties in which the office of register of deeds has been abolished) or the county in this State within which the property subject to such lien is situated." The IRS filed its NFTLs against CGI in that office in March and May 2006. Trane did not acquire its judgment lien against CGI until October 2006.

Since the IRS filed its NFTLs against CGI in the proper location before Trane acquired its judgment lien, Trane must establish that the NFTLs at issue failed to satisfy the requirements of section 6323(f). Under 26 U.S.C. § 6323(f)(3), "[t]he form and content of the notice" of lien "shall be prescribed by the Secretary," and "shall be valid notwithstanding any other provision of law regarding the form or content of a notice of lien." The applicable IRS regulations, 26 C.F.R. § 301.6323(f)-1(d)(1) and (2), state that the notice of a federal tax lien is required to be filed on a "Form 668," and that "[a] Form 668 must identify the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose regardless of the method used to file the notice of Federal tax lien." 26 C.F.R. §§ 301.6323(f)-1(d)(1) &(2).

In this case, there is no dispute that the IRS used the proper form and that the NFTLs identify the tax liabilities and assessment dates giving rise to the liens. The only legal issue in dispute is whether the IRS properly identified the taxpayer. When determining whether the IRS properly identified the taxpayer, both parties have noted the general proposition that an IRS tax lien need not perfectly identify the taxpayer. *See* Resp's Mem. at 13; Pl's Mem. at 8. Rather, the IRS must identify the taxpayer in a manner so that a "reasonable and diligent search" would reveal the tax lien's existence in identifying the taxpayer. *See* Resp's Mem. at 13 (citing *Hudgins v. IRS (In re Hudgins),* 967 F.2d 973, 976 (4th Cir. 1992)("Hudgins Masonry, Inc." rather than taxpayer's personal name, "Michael Steven Hudgins"); *United States. v. Crestmark Bank (In re Spearing Tool & Mfg. Co.),* 412 F.3d 653, 654-55 (6th Cir. 2005)("Spearing Tool & Mfg. Co., Inc." rather than "Spearing Tool and Manufacturing Co., Inc."); *Villard v. United States,* 176 F.3d 479 (5th Cir. 1999)("White-Hall Windermere Company, Inc." rather than "Whitehall-Windermere Company, Inc."); *Kivel v. United States,* 878 F.2d 301, 305 (9th Cir. 1989)("Bobbie Morgan" rather than "Bobbie Morgan Lane"); *United States v. Polk,* 822 F.2d 871 (9th Cir. 1987)("Roy Bruce Polk" rather than "Bruce Polk"); *Tony Thornton Auction Serv., Inc.,* 791 F.2d 635, 639 (8th Cir. 1986)("Davis's Restaurant" and "Daviss (sic) Restaurant" rather than "Davis Family Restaurant")).

The Fourth Circuit in *Hudgins, supra,* stated that "the validity of a tax lien in bankruptcy must depend on the constructive notice that the lien would give the purchaser. It reasonably follows that when there is a mistake in the indexing of a tax lien, as here, the validity of the lien in bankruptcy depends on whether it would nevertheless give a purchaser constructive notice." *Hudgins,* 967 F.2d at 976. Therefore, in *Hudgins*, the Fourth Circuit rejected a bright line

approach whereby an IRS lien would only be perfected if it was recorded in the exact name of the taxpayer.

The United States argues that in this case, the IRS substantially complied with section 6323(f) when it filed its NFTLs against Clontz-Garrison/CGI. The NFTLs identified the taxpayer as "Clontz-Garrison," the name CGI listed as its legal name in the employment and unemployment tax returns at issue. In addition, the United States argues that Trane knew that CGI previously conducted business under the Clontz-Garrison name, having conducted business with CGI under its former name and having utilized that name to bill CGI at least 16 times after Clontz-Garrison changed its name. The United States argues that had Trane searched under the name Clontz-Garrison in the Charleston County Register of Deeds federal tax lien index, it would have discovered the tax lien. However, the United States admits in its memorandum that a search under CGI would not reveal the liens filed under Clontz-Garrison.

To support its motion for summary judgment, the United States cites to both Sixth Circuit and Eighth Circuit opinions to support its argument that the NFTLs properly identify the taxpayer. First, the United States points to *In re Spearing Tool and Manufacturing Co., Inc.,* 412 F.3d 653 (6th Cir. 2005), where the Sixth Circuit Court of Appeals reversed the district court and affirmed the bankruptcy court's grant of summary decision in a case concerning the priority of a NFTL that did not exactly list the taxpayer's name. In *Spearing,* the Sixth Circuit found that a NFTL that identified the taxpayer as "Spearing Tool & Mfg. Company, Inc." instead of the correct legal name of "Spearing Tool and Manufacturing Co. Inc." properly identified the taxpayer. The name that the IRS used on the NFTLs was the precise name Spearing gave on its quarterly federal tax returns. Crestmark, a secured party who was perfected by filing a UCC financing statement against Spearing, submitted lien search requests to the Michigan Secretary of

State's office using Spearing's exact registered name. However, because of Michigan's limited electronic search technology, searches disclose only liens matching the precise name searched—not liens such as the IRS's that filed under slightly different or abbreviated names. A search Crestmark ran on February 2002 came back from the Secretary of State's office with a handwritten note stating: "You may wish to search using Spearing Tool & Mfg. Company Inc." But Crestmark did not search for that name at the time, and its exact-registered-name searches thus did not reveal the IRS liens. The Sixth Circuit Court of Appeals held that even though the IRS tax liens did not perfectly identify the taxpayer, in this particular case, the IRS's identification of Spearing was sufficient.

The Court first noted that "[t]he critical issue in determining whether an abbreviated or erroneous name sufficiently identifies a taxpayer is whether a 'reasonable and diligent search would have revealed the existence of the notices of the federal tax liens under these names.'" *Id.* (*citing Tony Thornton Auction Serv., Inc. v. United States,* 791 F.2d 635, 639 (8th Cir. 1986)). Under that standard, the Court determined that "Crestmark should have searched here for 'Spearing Tool & Mfg.' as well as 'Spearing Tool and Manufacturing.' 'Mfg.' and the ampersand are, of course, most common abbreviations—so common that, for example, we use them as a rule in our case citations. *Id.* at 656. Crestmark had notice that Spearing sometimes used these abbreviations, and the Michigan Secretary of State's office *recommended* a search using the abbreviations. *Id.* Combined, these factors indicate that a reasonable, diligent search by Crestmark of the Michigan lien filings for this business would have disclosed Spearing's IRS tax liens." *Id.*

Second, the United States cites to *Tony Thornton, supra,* an Eighth Circuit case where the Court resolved a priority dispute over auction proceeds of restaurant equipment in the

government's favor where the NFTL did not list all of the partners nor identify exactly the corporate name of the taxpayer. *Tony Thornton Auction Serv., Inc.,* 791 F.2d 635. In *Tony Thornton,* the IRS filed NFTLs that identified the taxpayer as "Joe W. Davis," "Daviss Restaurant" or "Davis's Restaurant," even though the restaurant filed employment tax returns listing several different trade names. *Id.* The IRS failed to file the NFTL in the name of Mary Ann Davis, who was a partner with Joe Davis. *Id.* Subsequently, a judgment creditor obtained a default judgment against both Joe W. Davis and Mary Davis d/b/a Joe Davis Family Restaurant. *Id.* The judgment creditor argued that because the notices were filed only in the names of the partnership and one partner, they were insufficient to perfect a lien against the property of the unnamed partner—Mary Davis. The Eight Circuit Court of Appeals held that the notices were sufficient to establish the validity of the tax liens against a judgment lien creditor under 26 U.S.C. § 6323. "The notices were filed on Form 668, the form prescribed by the Secretary of the Treasury, and the notices specified 'Joe W. Davis' and either 'Daviss Restaurant' or "Davis's Restaurant' in the space designated for the name of the taxpayer. A reasonable and diligent search would have revealed the existence of the notices of the federal tax liens filed under these names." *Id.* at 639.

Therefore, in this case, the United States argues that the IRS's notices listing the taxpayer by its former name of "Clontz-Garrison," instead of its legal name of "CGI Mechanical, Inc." is sufficient to establish the validity of the IRS's tax liens against Trane, the judgment lien creditor.

However, Trane argues that while case law permits minor variances between the taxpayer's name and the name listed on the NFTL, if the name variance is significant such that a search under the proper taxpayer's name would not have provided notice of the lien, the NFTL is insufficient to grant priority over a judgment lien creditor. Trane argues that the NFTLs at issue

in this case contained a substantial error in the listing of the name such that a reasonable search would not have discovered the lien against the taxpayer, and that therefore, the lien is invalid against a subsequent judgment creditor claiming priority as to the debtor's assets.

Trane points to *In re Crystal Cascades Civil, LLC,* 415 B.R. 403 (9th Cir. B.A.P. 2009), to support its argument that the NFTLs at issue in this case do not properly identify the taxpayer. In that case, the debtor corporation was formed under the name "Crystal Cascades, LLC," and used that name to obtain an EIN from the IRS. The debtor later formally changed its name to "Crystal Cascades Civil, LLC," but did not notify the IRS of the name change. The debtor did, however, use both names when filing its tax returns. The IRS later filed a lien naming "Crystal Cascades, LLC, a corporation" instead of "Crystal Cascades Civil, LLC." Appellees, who held later-in-time recorded liens against Crystal Cascades Civil, LLC's real property sought a declaration that their liens were superior to the IRS's two NFTLs recorded against the same property. The United States Bankruptcy Appellate Panel of the Ninth Circuit held that the NFTLs did not properly identify the taxpayer because they could not be discovered by a reasonable inspection of the public index of real property records where the property was located. The Court first noted that the notice itself must be on Form 668 and its contents are dictated by the Secretary of the Treasury. *Id.* at 409. The applicable treasury regulation requires that the NFTL "must identify the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose. . . ." *Id.* Further, the Court noted that with respect to real property, the notice requirement under the statute requires proper filing of the tax lien under the laws of the state "in which the property subject to the lien is situated." *Id.* (*citing* IRC § 6323(f)(1)(A)(i)). Where, as in *Crystal Cascades,* "the property is situated in a state that invalidates a deed against a bona fide purchaser unless the filing of that deed has been recorded, the NFTL 'shall not be treated as

meeting . . . the requirements' with respect to such a purchaser 'unless the fact of filing [the tax lien] is entered and recorded in [an] index . . . in such a manner that a reasonable inspection of the index will reveal the existence of the lien.'" *Id.* (*citing* IRC § 6323(f)(4)(A)). The *Crystal Cascades* Court then went on to analyze the reasonable inspection test under IRC § 6323(f)(4)(A):

> IRC § 3223(f)(4)(A) is concerned only with the notice imparted through the public indexing system and does not concern the actual or subjective knowledge of the subsequent purchaser. This is consistent with the purpose of the statute which was "to keep the federal tax lien in line with other recorded instruments in the state recording system. . . . [and] to serve as notice to subsequent purchasers wherever possible." We conclude as a matter of law that the plain language of the statute does not contemplate any type of subjective analysis. Rather, the focus is on whether an ordinary prudent person could discover the tax liens in the public indexing system.

*Id.* at 413.

The Court concluded that the failure to include an integral part of the debtor's name would have caused a searcher to fail to discover the existence of the lien, and thus the liens were invalid as to the subsequent purchaser. Importantly, however, the Court noted that their analysis was under the reasonable inspection test of § 6323(f)(4)(A) and was not an analysis of whether the IRS substantially complied with Treasury Regulation § 301.6323(f)-1(d)(2) which requires that the NFTL "must identify the taxpayer."

Trane argues that the facts of this case are unlikely to have alerted a title searcher to have discovered the existence of the tax lien. At the time the tax lien arose and at the time the lien was filed, the debtor was known as CGI Mechanical, Inc.; Clontz-Garrison Mechanical Contractors, Inc. did not exist on those dates, and on the date of the filing of the lien, had not been in existence for almost three years. According to Trane, [t]here is no reason for a title searcher to have looked under the name Clontz-Garrison to discover a lien filed against the

debtor which arose in 2004, as it was no longer known by that name on that date." Trane Mem. at 10. Trane also distinguishes *Spearing Tool* from the facts of this case and notes that, as discussed above, in *Spearing Tool,* the Sixth Circuit held that a filing using the abbreviation Mfg. and using an ampersand did not render the IRS filing defective, as the indexing authority warned searchers to utilize abbreviations in searching for names and the abbreviation would have put a searcher on notice to look under both words. By contrast though, in the present case, the IRS did not use a mere contraction or form of another word—it used a completely different name. Id. Therefore, Trane argues that the IRS failed to properly file the tax liens because it failed to properly identify the taxpayer responsible for the liens. "The error in listing the name of the taxpayer was not minor, such as utilizing an abbreviation rather than spelling out a word in the title; instead, it was a name by which the taxpayer had not been known at the time the tax arose, was assessed, and at the time the lien was filed. The failure of the IRS to properly identify the name of the taxpayer, as required by IRS guidelines, renders the lien ineffective against a subsequent judgment lien creditor, regardless of alleged inquiry notice to that creditor. The IRS acknowledges in the stipulation of fact that attempting to locate the liens by inputting the correct name of the taxpayer would not have provided a searcher notice in the Charleston County RMC filing system of the liens filed by the IRS against Clontz-Garrison." Id. at 12-13. A search under the name "CGI" or "CGI Mechanics" or the proper name, "CGI Mechanical," does not reveal the presence of the tax liens at issue in this case.

Finally, Trane argues that the United States' argument that Trane should have searched under Clontz-Garrison because Trane knew CGI was formerly Clontz-Garrison and because Trane utilized the name Clontz-Garrison to bill CGI at least 16 times after Clontz-Garrison changed its name is an absurd conclusion. Trane points to the example of Exxon and claims that

"a person seeking to recover a judgment against Exxon would have to also search under the name 'Esso,' although the name change took place long before the liability arose. Similarly, a person with a claim against 3M Company would be required to also search under the name Minnesota Mining and Materials Company, although the company had long ago changed its name." Trane's Reply Mem. at 3. Trane claims that it is under no obligation to assume that the IRS failed to properly identify a taxpayer in filing a tax lien. Trane "was under no obligation to presume that the IRS—to whom the debtor properly reported its legal name and with whom it filed tax returns under its proper legal name—would fail to follow appropriate guidelines and file against a debtor in its appropriate legal name." Id. at 4. Therefore, Trane concludes that it properly exercised its rights under state law and obtained possession of the disputed funds and is entitled to retain the funds. Id.

The Court finds that under the facts of this particular case, a reasonable and diligent search by Trane would have revealed the existence of federal tax liens filed against CGI. The Court finds that because Trane conducted business with Clontz-Garrison for four years prior to CGI's name change and because Trane continued to use the name Clontz-Garrison to bill CGI at least 16 times after CGI changed its name, a reasonable and diligent search by Trane for liens against CGI would include a search under the name "Clontz-Garrison." The Court finds the reasoning used by Sixth Circuit Court of Appeals in *Spearing Tool* to be applicable to the case at hand. *In re Spearing Tool and Manufacturing Co., Inc.,* 412 F.3d 653 (6th Cir. 2005). As discussed above, the Sixth Circuit Court of Appeals held in *Spearing Tool* that because the abbreviated version of "manufacturing" and the ampersand are common abbreviations, because Crestmark had notice that Spearing sometimes used these abbreviations, and because the Secretary of State's office recommended a search using the abbreviations, a reasonable and

diligent search by Crestmark would have included a search using those abbreviations. *Id.* Therefore, the *Spearing* Court found that even though a search under the proper legal name of Spearing would not have revealed the NFTLs, under the circumstances of this particular case and in light of knowledge that Crestmark had, the NFTLs were valid against Crestmark and the IRS's tax liens were entitled to priority. *Id.* Importantly, the *Spearing* court looked at what was reasonable in that particular circumstance and as to the particular searcher, Crestmark, in finding that the NFTLs were valid even though they were not filed under the precise legal name of the taxpayer.

In this case, Trane knew CGI was previously known as Clontz-Garrison and continued to address correspondence to Clontz-Garrison after the name change. *See Hudgins, 967 F.2d* at 977 ("A purchaser of Hudgins' business assets would certainly have known that Hudgins traded as 'Hudgins Masonry, Inc.' and finding a lien against Hudgins Masonry, Inc. would have taken further steps to determine if the assets were encumbered."); *Pioneer Nat'l Title Ins. Co. v. United States,* No. 80-1343, 1981 WL 1816, at *4 (D.N.J. May 18, 1981) (in granting summary judgment, court interpreted constructive notice to be "stated as a matter of law that a reasonably diligent title investigation entails searching for tax liens under any name which the searcher knows to have been used by the seller prior to parting with his property"). Applying the *Spearing* analysis to this case, the Court finds that under the circumstances of this Case, the NFTLs properly identified the taxpayer because a reasonable and diligent search by Trane would have disclosed the tax liens. Therefore, the IRS's tax liens are entitled to priority over Trane's judgment lien pursuant to section 6323 of the Internal Revenue Code.

Lastly, the Court addresses Henry J. Garrison and CGI Mechanical, Inc.'s motion for summary judgment. CGI and its owner, Henry J. Garrison, take the position that the funds

should be paid to the United States. However, Garrison and CGI seek summary judgment with regard to their request that the Court designate any payment made to the IRS as voluntary and order that such payment be applied to the trust fund portion of CGI's federal tax liability for which Garrison is personally liable. Garrison and CGI argue that since they acted to have the Master-in-Equity set aside its order disbursing the proceeds to Trane and to have the money disbursed to the IRS, the Court should designate any monies that are to be received by the IRS as voluntary because it is through the sole efforts of CGI and Garrison that the IRS was able to assert a claim to the money.

Garrison and CGI argue that they took decisive, voluntary action to protect the IRS's claim to funds and prevailed in providing that protection to the IRS. In the post-judgment proceedings before the Master-in-Equity, CGI's previous counsel sent a letter to the IRS when it filed a response to Trane's motion for the turnover of the funds alerting the IRS that it had rights in the $115,868.89. However, Garrison and CGI argue that the IRS did nothing to protect its interests, and the Master-in-Equity disbursed the funds to Trane. CGI and Garrison argue that believing that the IRS, not Trane, was entitled to the funds, CGI and Garrison took independent action and requested that the Master-in-Equity reverse his disbursement order and have the funds returned to the Court. The Master-in-Equity then granted CGI's and Garrison's request, and the IRS was subsequently permitted to intervene into the case and make a claim to the funds. CGI and Garrison argue that based on their actions, the Court should find that the tax payments are voluntary and should permit CGI and Garrison to designate how any payment made to the IRS should be applied to the outstanding tax liabilities.

The tax liabilities at issue in this case are unpaid payroll taxes of CGI. Payroll tax liabilities consist of essentially two equal parts. The Internal Revenue Code directs employers to

deduct and withhold a tax upon wages paid.  26 U.S.C. § 3401(a).  The withheld taxes are deemed to be held in a special fund in trust for the United States and commonly referred to as the "trust fund" portion of the withholding tax liability.  26 U.S.C. § 7501(a).  The second part of payroll tax liabilities is the matching payments that the employer is required to make on the employees' behalf.  26 U.S.C. § 3402.  With regard to the trust fund portion, any person who has the requisite control over the business is personally liable for the trust fund portion of the payroll taxes if they are not turned over to the IRS.  26 U.S.C. § 6672.  These officers and employees are commonly referred to as "responsible persons."  Garrison is the responsible person for CGI.  As the tax lien demonstrates, CGI has outstanding payroll tax liabilities to the IRS.  The IRS also assessed Garrison under 26 U.S.C. § 6672 as a responsible corporate officer and is holding him personally liable for the trust fund portion of the payroll taxes.  Therefore, if the payments are designated for the trust fund portion of the debt, Garrison's potential liability for the unpaid portion of the trust fund taxes will be significantly reduced.

Previously, in *In re Frank Meador Buick, Inc.*, 946 F.2d 885, 1991 WL 209824 (4th Cir. 1991), the Fourth Circuit explained the legal distinction between voluntary and involuntary payments:

> It is the policy of the IRS to allow an employer who voluntarily makes tax payments to designate that such payments should be applied first to its trust fund tax liability.  *United States v. Energy Resources Co.,* 58 U.S.L.W. 4609 [495 U.S. 545] (1990).  Payments classified as being made involuntarily may not be designated.  "An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor."  *Amos v. Comm'r,* 47 T.C. 65, 69 (1966).  The IRS generally applies involuntary payments to the nontrust fund portion of the tax liability and seeks to recover the trust fund portion from the responsible parties.  *In re Technical Knockout Graphics, Inc.,* 833 F.2d 797, 799 (9th Cir. 1987); *cf Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir. 1983) (citing IRS Policy Statement P-5-60 ("[w]hen a payment is involuntary, IRS policy is to allocate the payments as it sees fit.").

The Court denies CGI and Garrison's request that it designate any payment made to the IRS as voluntary. Instead, the Court finds that any such payment made to the IRS is involuntary under the circumstances of this case. As stated above, an involuntary payment of Federal taxes means "any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." *Amos v. Comm'r,* 47 T.C. 65, 69 (1966). In this case, the United States intervened in the state court legal proceedings claiming a right to the settlement proceeds at issue by virtue of its federal tax liens, and now moves this Court to enter judgment in its favor and award it the settlement proceeds. While CGI and Garrison may have notified the IRS of the underlying state court action and may agree that the United States is entitled to priority over Trane, this payment is still the result of a legal proceeding in which the government sought to collect delinquent taxes. As such, and as the United States argues in its memorandum in opposition to CGI's and Garrison's motion, the Court finds that any payment received through this legal proceeding should be considered involuntary under the definition of "involuntary" as articulated by the United States Tax Court in *Amos.*

## CONCLUSION

Based on the foregoing, the court **ORDERS** that Respondent United States of America's Motion for Summary Judgment be **GRANTED** and that Plaintiff The Trane Company's, Defendant CGI Mechanical, Inc.'s, and Respondent Henry J. Garrison's Motions for Summary Judgment be **DENIED.**

PATRICK MICHAEL DUFFY
United States District Judge

**July 28, 2010**
**Charleston, SC**